**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
ZHEHAO WANG,                    )
                                )
              Plaintiff,        )
                                )
              v.                )        1:24cv1018
                                )
ZHIYANG DENG,                   )
                                )
                                )
              Defendant.        )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the undersigned United States Magistrate Judge on the Application to Proceed in District Court Without Prepaying Fees or Costs (Docket Entry 1) (the "Application") filed by Zhehao Wang (the "Plaintiff") in conjunction with his pro se complaint (Docket Entry 2) against Zhiyang Deng (the "Defendant"). The undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

**APPLICABLE LEGAL PRINCIPLES**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted).

"Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . (i) is frivolous or . . . (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

The United States Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word frivolous is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (internal quotation marks omitted). In assessing such matters, the Court may "apply common sense." Nasim, 64 F.3d at 954.

"[The C]ourt may consider subject matter jurisdiction as part of the frivolity review." Overstreet v. Colvin, No. 4:13cv261, 2014 WL 353684, at *3 (E.D.N.C. Jan. 30, 2014) (citing Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)); see also Lovern, 190

2

F.3d at 654 ("[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence. Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure." (citation omitted)). Indeed, even absent Section 1915(e)(2)(B), the Court possesses "an independent obligation to determine whether subject-matter jurisdiction exists," Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'"). This obligation arises because federal courts constitute courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). As such, no presumption of jurisdiction applies, see Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," Bulldog Trucking, 147 F.3d at 352; see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

3

Generally, federal courts possess jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and actions involving citizens of different states, 28 U.S.C. § 1332. Facts supporting jurisdiction must appear in the complaint, see Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted).

As for the second ground for Section 1915(e)(2)(B) dismissal, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In conducting this analysis, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S.

4

89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court also "put[s] aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

## **BACKGROUND**

Through his "Complaint/Urgent Motion for Temporary Restraining Order" (Docket Entry 2 (the "Complaint") at 1 (bold and all-cap

5

font omitted)),[1] Plaintiff, a "Citizen or Subject of a Foreign Country" (Docket Entry 3 at 1), sued Defendant, also a "Citizen or Subject of a Foreign Country" (id.), for alleged breach of contract and other wrongdoing related to "a $49,966 loan" (Docket Entry 2 at 1). (See generally id. at 1-3.) As relevant here, the Complaint states:

**INTRODUCTION**

1. Plaintiff[] . . . brings this action against Defendant[] . . . for breach of agreement and financial misconduct involving $49,996.

2. Plaintiff seeks immediate relief, including the issuance of a Temporary Restraining Order (TRO) & Preliminary Injunction, to prevent Defendant from leaving the United States in mid-December 2024 (before this lawsuit being resolved).

**JURISDICTION AND VENUE**

3.[ ]Venue is proper under 28 U.S.C. § 1391(b)(1) as Defendant resides in Chapel Hill, North Carolina. Jurisdiction is proper as Defendant is in suspicion of violating the [I]nvestment [A]dvisers [A]ct of 1940, a federal statute, for practicing as [an] investment adviser without proper qualification, wherein a federal question arises.

**PARTIES**

4. Plaintiff[] . . . resides [in] . . . Charlotte, North Carolina.

5. Defendant[] . . . is believed to reside at his last known address, [in] . . . Chapel Hill, North Carolina, though it is unclear if this remains his current address. Defendant holds passport number . . . and phone number . . . . Defendant is graduating from the University of

---

1    Docket Entry page citations utilize the CM/ECF footer's pagination.

North Carolina at Chapel Hill in December 2024 and is preparing to leave the United States in mid-December 2024.

**FACTUAL ALLEGATIONS**

6. Defendant proposed an arrangement to Plaintiff, offering a 13% return within three months on a $49,966 loan. To secure Plaintiff's trust, Defendant claimed to have 1 million Chinese yuan in savings in China, assuring that these funds would guarantee repayment in the event of significant financial loss. Defendant further explained that, given the bullish stock market conditions at the time, he intended to trade on Plaintiff's brokerage account to achieve returns substantially exceeding 13%. Based on these assurances and the potential for higher profits, Plaintiff agreed to lend Defendant $49,966 and granted him access to Plaintiff's stock brokerage account to execute trades.

7. In late April 2024, Defendant incurred significant losses while trading stocks, rendering him unable to fulfill the initial agreement to repay the $49,966 principal with 13% interest within three months. At that time, Defendant revealed to Plaintiff that the previously claimed 1 million Chinese yuan assurance fund, which he had presented as a safety net for repayment, had actually been used by his parents in China for other purposes. Defendant then proposed a new repayment agreement to address the debt. Out of sympathy, Plaintiff agreed to the Defendant's proposal. Under the new agreement, Defendant committed to repaying $10,000 at the start of every three months, beginning in May 2024, with the full repayment of the $49,966 debt, plus an additional 15% interest on the total principal amount, to be completed by May 2025.

8. To date, Defendant has repaid $20,000 but failed to make the required $10,000 payment due by November 1, 2024. This leaves an unpaid balance of $29,966 in principal and $7,494.9 in accrued interest.

9. Defendant has ceased communication with Plaintiff and is actively avoiding repayment obligations.

10. Defendant's likely planned departure from the United States in mid-December 2024 poses a significant risk of irreparable harm to Plaintiff's ability to recover funds.

Defendant is unlikely to return to the U.S. after his
departure, suggesting an attempt to evade the debt
entirely.

**LEGAL CLAIMS**

**Count 1: Breach of Contract**

11. Defendant failed to honor repayment terms under the
renegotiated agreement with Plaintiff.

**Count 2: Financial Misconduct**

12. Defendant demonstrated financial misconduct by
soliciting funds and failing to fulfill repayment
obligations.

**Count 3: Request for Injunctive Relief**

13. Defendant's imminent departure poses irreparable
harm, as recovery of funds will be significantly
obstructed if Defendant leaves the United States.

**REQUEST FOR EQUITABLE RELIEF**

Plaintiff respectfully requests that this Court:

1. Grant a Temporary Restraining Order (TRO) to
immediately prevent Defendant[] . . . from leaving the
United States.

2. Notify relevant authorities, including U.S. Customs
and Border Protection (CBP), to enforce the travel
restriction.

3. Schedule a Preliminary Injunction hearing as soon as
possible to determine whether the TRO should remain in
effect until resolution of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

1. A Temporary Restraining Order (TRO) and Preliminary
Injunction preventing Defendant from leaving the United
States.

2. A judgment of $29,966 in unpaid principal and $7,494.9 in accrued interest.

3. Reimbursement of legal fees and costs.

4. Any other relief this Court deems just and proper.

(Id. (bold and all-cap font in original).)

Unlike the Application, which bears both an electronic and handwritten signature (see Docket Entry 1 at 2), the Complaint lacks any signature, electronic or handwritten (see Docket Entry 2 at 3). Relatedly, Plaintiff neither verified the Complaint (see id. at 1-3) nor submitted any affidavit swearing to the truth of its assertions (see Docket Entries dated Dec. 4, 2024, to present).

## **DISCUSSION**

### **I. Pleading Requirements**

As an initial matter, Rule 11 of the Federal Rules of Civil Procedure (the "Rules") obliges pro se litigants to sign "[e]very pleading, written motion, and other paper." Fed. R. Civ. P. 11(a).[2] Unlike his Application (see Docket Entry 1 at 2), Plaintiff failed to sign his Complaint (see Docket Entry 2 at 3), justifying its dismissal for failure to comply with Rule 11.[3]

Moreover, Rule 65 specifies that "[t]he [C]ourt may issue a temporary restraining order without written or oral notice to the

_____

2 Attorneys bear this obligation for materials they file on behalf of their clients. See id.

3 Indeed, Rule 11 requires the Court to "strike an unsigned paper unless the omission is promptly corrected after being called to the [relevant] party's attention." Fed. R. Civ. P. 11(a).

adverse party or its attorney only if," as relevant here, "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Here, Plaintiff filed neither an affidavit nor a verified Complaint. (See Docket Entries dated Dec. 4, 2024, to present; see also Docket Entry 2 at 1-3.) Accordingly, under Rule 65, the Court cannot issue the requested TRO, see Fed. R. Civ. P. 65(b)(1)(A), and could, at best, entertain "issu[ing] a preliminary injunction only on notice to [Defendant]," Fed. R. Civ. P. 65(a)(1). However, this Court's Local Rules oblige litigants to file any request for a temporary restraining order or preliminary injunction by separate motion, rather than merely including them as part of their complaints. See M.D.N.C. LR 7.3(a) ("All motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief except [in circumstances not relevant here]. Each motion shall be set out in a separate document."); M.D.N.C. LR 65.1(a) ("A prayer for a temporary restraining order or preliminary injunction set forth in a pleading will not bring the issue before the Court prior to the time of trial."). Plaintiff failed to comply with this requirement (see Docket Entries dated Dec. 4, 2024, to present), further justifying denial of Plaintiff's TRO request, see, e.g., M.D.N.C. LR 83.4(a) (authorizing entry of any just order as sanction for failure to

10

comply with Court's Local Rules, including order striking filing "or dismissing the action or any part thereof").

These failures independently justify denial of Plaintiff's TRO request and dismissal of Plaintiff's Complaint.  In addition, Plaintiff's Complaint falls short under Rule 8, as discussed below.

## II.  Subject-Matter Jurisdiction

Per Rule 8, every complaint "must contain," inter alia, "a short and plain statement of the grounds for the [C]ourt's jurisdiction." Fed. R. Civ. P. 8(a)(1); see also Pinkley, 191 F.3d at 399 (observing that jurisdictional facts must appear in complaint).  In turn, Rule 12 requires the Court to dismiss an action "[i]f the [C]ourt determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).  According to the Complaint, the Court possesses federal question jurisdiction over this action because "Defendant is in suspicion of violating the [I]nvestment [A]dvisers [A]ct of 1940, a federal statute, for practicing as investment adviser without proper qualification." (Docket Entry 2 at 1.)  As discussed more fully below, though, the Complaint fails to raise a claim under the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 et seq. (at times, the "IAA").  See, e.g., Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 24 (1979) ("hold[ing] that there exists a limited private remedy under the Investment Advisers Act of 1940 to void an

investment advisers contract, but that the [IAA] confers no other private causes of action, legal or equitable").

The Court also lacks diversity jurisdiction over this action. Under 28 U.S.C. § 1332, federal courts possess jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [the parties qualify as diverse]." 28 U.S.C. § 1332(a). "Thus, in the event jurisdiction is based on diversity, the pleader must allege citizenship and the amount in controversy must exceed $75,000.00. Both the requisite amount in controversy and the existence of diversity must be affirmatively established on the face of [the Complaint]." Denny v. Orient Lines, 375 F. Supp. 2d 1320, 1322 (D.N.M. 2005) (internal quotation marks omitted); see also Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008) (observing that "a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332" (brackets and internal quotation marks omitted)).

"It is the firmly established general rule of the federal courts that the plaintiff's claim is the measure of the amount in controversy and determines the question of jurisdiction . . . ." McDonald v. Patton, 240 F.2d 424, 425 (4th Cir. 1957). Thus, "the sum claimed by the plaintiff [in the Complaint] controls if the

12

claim is apparently made in good faith." <u>St. Paul Mercury Indem.</u> <u>Co. v. Red Cab Co.</u>, 303 U.S. 283, 288 (1938) (footnote omitted); <u>accord</u> <u>Choice Hotels Int'l, Inc. v. Shiv Hosp., L.L.C.</u>, 491 F.3d 171, 176 (4th Cir. 2007) ("The black letter rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith." (internal quotation marks omitted)); <u>see also</u> <u>Hunt v. Washington State Apple Advert.</u> <u>Comm'n</u>, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

Here, the Complaint seeks repayment of "an unpaid balance of $29,966 in principal and $7,494.9 in accrued interest," as well as an injunction preventing Defendant from leaving the United States during the pendency of this lawsuit to ensure "recovery of [those] funds." (Docket Entry 2 at 2; <u>see</u> <u>id.</u> at 3.) As the Complaint seeks recovery of less than $37,500 (<u>see</u> <u>id.</u> at 3), it fails to clear the $75,000 amount in controversy threshold for diversity jurisdiction. <u>See</u> <u>Burdick v. Teal</u>, No. 1:02cv727, 2003 WL 1937118, at *1 (M.D.N.C. Apr. 22, 2003) ("[W]here the amount in controversy is clearly and unambiguously set forth in good faith on the face of the complaint, that amount should control."). This failure alone precludes diversity jurisdiction. <u>See</u> <u>Denny</u>, 375 F. Supp. 2d at

1323 (explaining that "[b]oth elements are necessary to invoke a district court's diversity jurisdiction" and dismissing action for want of jurisdiction where "the amount in controversy is less than the jurisdictional requirement").

Additionally, Plaintiff and Defendant both qualify as foreign nationals. (See Docket Entry 3 at 1.) However, "[d]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." Cheng v. Boeing Co., 708 F.2d 1406, 1412 (9th Cir. 1983); see also 28 U.S.C. § 1332(a)(1)-(4). The Court therefore lacks diversity jurisdiction over this action, necessitating its dismissal. See Fed. R. Civ. P. 12(h)(3); see also Davis, 856 F.2d at 650 (explaining that party asserting federal jurisdiction must show it exists); Constantine, 411 F.3d at 480 (explaining that federal courts possess independent obligation to assess subject-matter jurisdiction).

### III.  Investment Advisers Act of 1940

As noted, the Complaint relies on the IAA for its jurisdictional basis. (See Docket Entry 2 at 1.) "The [IAA] was enacted to deal with abuses that Congress had found to exist in the investment advisers industry." TAMA, 444 U.S. at 12-13. "The IAA is the last in a series of Acts designed to eliminate certain abuses in the securities industry which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." NexPoint Diversified Real Est. Tr. v. Acis Cap.

14

<u>Mgmt., L.P.</u>, 80 F.4th 413, 417 (2d Cir. 2023) (ellipsis and internal quotation marks omitted). "It generally governs the conduct of investment advisers and vests regulatory and enforcement authority in the Securities and Exchange Commission. Two sections of the IAA a[ppear] relevant here." <u>Id.</u> (parenthetical omitted).

First, "[Section] 206 establishes 'federal fiduciary standards' to govern the conduct of investment advisers." <u>TAMA</u>, 444 U.S. at 17. "[A] broad antifraud provision[,]" Section 206 "makes it unlawful for any investment adviser to, <u>inter alia</u>, 'employ any device, scheme, or artifice to defraud any client or prospective client;' or 'engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.'" <u>NexPoint</u>, 80 F.4th at 417 (quoting 15 U.S.C. §§ 80b-6(1), (2)).[4] "The Supreme Court concluded in <u>TAMA</u> that Congress did not intend [Section] 206 to be enforced through private litigation." <u>Id.</u> at 420; <u>see also</u> <u>TAMA</u>, 444 U.S. at 24 ("Section 206 of the [IAA] here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. The dispositive question remains whether Congress intended to create any such remedy.

_____

4 Section 206 does not, however, specifically mention "proper qualification[s]" (Docket Entry 2 at 1) "for practicing as [an] investment adviser" (<u>id.</u>). <u>See</u> 15 U.S.C. § 80b-6.

Having answered that question in the negative, our inquiry is at an end." (citations omitted)).

Second, Section 215 "provides that contracts whose formation or performance would violate the [IAA] 'shall be void . . . as regards the rights of' the violator and knowing successors in interest." TAMA, 444 U.S. at 16-17 (ellipsis in original). According to the Supreme Court, Section 215 provides "a right to specific and limited relief in a federal court," id. at 18, namely the ability to sue "for rescission or for an injunction against continued operation of the contract, and for restitution," id. at 19. Importantly, however, such restitution equals only "the consideration given under the contract, less any value conferred by the other party." Id. at 24 n.14. It does not "include compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction," as "[s]uch relief could provide by indirection the equivalent of a private damages remedy that [the Supreme Court] ha[s] concluded Congress did not confer." Id. In other words, a private litigant can, at most, pursue a claim to rescind an investment contract and recover the fees paid pursuant to that contract. See id. at 24 & n.14.

The Complaint does not even attempt to state such a claim. (See Docket Entry 2 at 1-3.) To begin, the Complaint contains no factual allegations supporting its conclusory assertion that

16

"Defendant is in suspicion of violating the [IAA], a federal statute, for practicing as [an] investment adviser without proper qualification" (id. at 1).  (See id. at 1-3 (lacking any factual allegations regarding Defendant's purported qualifications).)  The Court should thus disregard this bare assertion.  See SD3, 801 F.3d at 422.  Moreover, it does not appear that a lack of qualifications, by itself, violates Section 206.  See 15 U.S.C. § 80b-6.  Additionally, the Complaint maintains that Defendant failed to repay a loan — not that he acted improperly in serving as an investment adviser — and seeks to enforce the alleged "repayment terms under the renegotiated agreement" (Docket Entry 2 at 2), rather than seeking to rescind the parties' alleged agreement and recoup fees that Plaintiff paid Defendant for investment services.  (See id. at 1-3.)  Accordingly, to the extent the Complaint invokes federal question jurisdiction, it fails to state a viable claim under the IAA, see TAMA, 444 U.S. at 24 & n.14, necessitating dismissal of any such claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.  State-law Claims

Liberally construed, the Complaint also raises claims for breach of contract and breach of good faith and fair dealing and/or fiduciary duty.  (See Docket Entry 2 at 2.)  These claims arise under state law.  See, e.g., Nadendla v. WakeMed, 24 F.4th 299, 307-08 (4th Cir. 2022) (analyzing breach of contract and breach of

17

implied covenant of good faith and fair dealing claims under North Carolina law); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 345-49 (4th Cir. 1998) (analyzing breach of contract and breach of fiduciary duty claims under North Carolina law); see also Cardinal Energy, LLC v. Equitrans, LP, No. 1:16cv187, 2016 WL 7413501, at *8 (N.D. W. Va. Dec. 22, 2016) (explaining that "the adjudication of tort and contract claims properly lies with the state unless Congress clearly intends otherwise," rejecting contention that breach of contract and tort claims raised federal question, and remanding case to state court). Given the absence of diversity jurisdiction (and setting aside the absence of federal question jurisdiction), supplemental jurisdiction under 28 U.S.C. § 1367 would provide the only possible basis for subject-matter jurisdiction over Plaintiff's state-law claims.

The Court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c). Courts may decline to exercise supplemental jurisdiction when they dismiss all federal claims. See 28 U.S.C. § 1367(c)(3); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). Relevant considerations in deciding whether to exercise supplemental jurisdiction include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and

18

considerations of judicial economy." Shanaghan, 58 F.3d at 110. Given these factors, even if federal question jurisdiction existed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. As a general rule, declining supplemental jurisdiction best promotes comity, convenience, judicial economy, and fairness upon the dismissal of all federal claims early in litigation. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also id. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, even if the Court possessed federal question jurisdiction over this action, it should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c).

## V. Injunctive Relief

As a final matter, if Plaintiff had alleged a viable IAA claim, he could only seek injunctive relief to prevent "continued operation of the contract." TAMA, 444 U.S. at 19. Rather than rescission, Plaintiff seeks to enforce the parties' alleged loan repayment agreement, including recovery of "$29,966 in unpaid principal and $7,494.9 in accrued interest" (Docket Entry 2 at 3).

19

(See id. at 1-3.)  The IAA precludes such relief.  See TAMA, 444 U.S. at 24 & n.14.

Additionally, Plaintiff seeks injunctive relief "preventing Defendant from leaving the United States."  (Docket Entry 2 at 3.) "A court should not impose an injunction lightly, as it is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it."  Cantley v. West Va. Reg'l Jail & Corr. Facility Auth., 771 F.3d 201, 207 (4th Cir. 2014) (internal quotation marks omitted).  Moreover, "any injunction must be narrowly tailored to the facts of the case."  Bone v. University of N.C. Health Care Sys., 678 F. Supp. 3d 660, 686 (M.D.N.C. 2023). "An injunction is narrowly tailored when it is 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[].'"  Id. (quoting PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011)).  As the Complaint seeks an injunction precluding Defendant's departure from the United States following his graduation from university — a circumstance with potential immigration consequences given Defendant's status as a foreign national, see, e.g., Guilford Coll. v. Wolf, No. 1:18cv891, 2020 WL 586672, at *1-*3 (M.D.N.C. Feb. 6, 2020) — the requested injunction likely exceeds the scope of permissible relief. See Hayes v. North State Law Enf't Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993) ("Although injunctive relief should be designed to

20

grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation.").

**CONCLUSION**

The Court lacks both diversity and federal question jurisdiction over this action. Alternatively, the Complaint and TRO request violate the Rules and this Court's Local Rules, seek improper injunctive relief, and fail to state a viable claim under the IAA. As such, even if federal question jurisdiction exists, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that the Court dismiss without prejudice this action for lack of subject-matter jurisdiction, or alternatively, that the Court dismiss any claim under the IAA for failure to state a claim and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

This 11th day of December, 2024.

/s/ L. Patrick Auld<br>L. Patrick Auld<br>United States Magistrate Judge